Tony **HENDRICKS, et al., Appellants,**

v.

Tony **TODORA, et al., Appellees.**

No. 05–85–00527–CV.

Court of Appeals of Texas,
Dallas.

Nov. 26, 1986.

Rehearing Denied Jan. 16, 1987.

Michael Sloan, Mark Siegel, Dallas, for appellants.

R. Brent Cooper, Michael M. Huddleston, Dallas, for McFadden, Kendrick.

Chester G. Ball, Dallas, for Tony Todora.

Before GUITTARD, C.J., and VANCE and WITHAM, JJ.

## ON MOTION FOR REHEARING

GUITTARD, Chief Justice.

In this personal injury suit, plaintiffs appeal from a summary judgment in favor of defendants. Plaintiffs Tony Hendricks and Kerry Poss were injured when an automobile crashed through a glass wall of the area where they were awaiting entrance to Confetti's, a bar and restaurant. They sued Tony Todora, owner and lessor of the premises; 5201 Matilda, Inc., the lessee; and an affiliated corporation, McFadden, Kendrick Company, as well as the driver, who defaulted. Todora, Matilda, and McFadden filed motions for summary judgment, all of which were granted. We affirm.

In their motions for summary judgment, defendants asserted that, as a matter of law, they had no duty to protect the invitees of Confetti's against the unforeseeable criminal conduct of a third party. On this appeal, plaintiffs contend that a fact question is raised by summary-judgment proof indicating that such conduct could reason-

ably have been foreseen in the light of the circumstances. We do not agree.

The affidavits and depositions before the trial court reveal the following facts. Confetti's is located in a building surrounded by a paved parking lot. Several clubs selling intoxicating beverages face the area of the lot where Confetti's is located. Two other clubs are in another part of the lot, and a "topless" bar is nearby. The lot also provides parking for a restaurant, a liquor store, and a convenience store selling alcoholic beverages.

Larry Hughes testified by deposition that he was a security guard who worked on the parking lot approximately 180 times. He occasionally evicted intoxicated persons from the clubs. When he evicted intoxicated persons, he did not put them in their cars, but took them to a nearby doughnut shop for coffee.

Hughes describes the parking lot as "very small" and "highly congested." Many cars park in the lot and many also drive through in different directions. Hughes thinks that often the drivers of these cars have been drinking in the clubs. He relates no instances, however, in which a driver was obviously intoxicated or not in control of his vehicle. In Hughes's opinion, these conditions make the lot dangerous, and he believes that barricades around the buildings would make them safer.

When asked what could be done to make the parking lot safer, Hughes testified:

> Tear it down, put a bunch of policemen in there and to make them escort everybody driving around. Put up a steel barricade around every building, give breath tests at the entrance or every time someone gets in their car, put a bunch of speed bumps in there. They got a few now right in front of Confetti's.

The layout of the parking lot allows cars to drive next to persons waiting for entrance to the clubs and allows cars to pass within a few feet of the people in the enclosed "porte cochere"[1] along the front of the building where customers stand awaiting entrance to Confetti's. A wall constructed of opaque glass blocks with one or more metal columns keeps people standing there from seeing the parking lot. Other than this wall and a six-inch concrete curb, no post, barricade, or barrier prevents vehicles from hitting the waiting customers.

On the occasion in question, the driver of the automobile had parked on the lot and had spent about thirty minutes in a "topless" bar. He returned to his car before nightfall. He drove through the parking lot toward Confetti's, over the curb, through the glass wall and metal column, and into the "porte cochere," where plaintiffs and others were waiting to enter Confetti's. Both plaintiffs were injured. The driver was convicted of aggravated assault. There is evidence that no similar occurrence had taken place in the area, and there is no evidence of any arrests of intoxicated drivers.

Unquestionably, plaintiffs were invitees on the premises, and we assume, but do not decide, that both the lessor and the lessee had the general duty of an occupier of premises to exercise reasonable care for their safety. The record clearly shows that plaintiffs' injuries were not actually caused by any act of the defendants or by any continuing hazard on the premises, but rather by the criminally reckless act of an intoxicated driver. The question is whether, under the facts of this case, the occupier's general duty of reasonable care extended to extraordinary precautions, such as those described by Hughes, to protect invitees from the sudden and unprecedented recklessness of an intoxicated driver.

■ This question of duty turns on the foreseeability of harmful consequences, which is the underlying basis for negligence. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex.1983). The occu-

---

1. Although referred to in the record as a "porte cochere," this part of the building did not include a driveway for vehicles.

pier's liability to an invitee depends on whether he acted reasonably in the light of what he knew or should have known about the risks accompanying a premises condition; he is subject to liability for physical harm caused to his invitees by a condition on the land if he knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees and fails to exercise reasonable care to protect them against the danger. *Corbin,* 648 S.W.2d at 295, quoting RESTATEMENT (SECOND) OF TORTS, section 343 (1965); *accord H.E.B. Food Stores, Inc. v. Flores,* 661 S.W.2d 297 (Tex.App.—Corpus Christi 1983, writ dism'd) (storekeeper had no duty to protect customer against hazard of water on floor in absence of evidence of defendant's knowledge of wetness of floor or how long water had been present). If the dangerous condition on the premises is created by the act of a third person, evidence must show that the condition had existed for a sufficient length of time to give the occupier notice because it is unjust to hold the occupier responsible for the carelessness of a person over whom he has no control unless he has a reasonable opportunity to discover the dangerous condition. *Coffee v. F.W. Woolworth Co.,* 536 S.W.2d 539, 541 (Tex.1976).

■ The standard of conduct required of an occupier is the general standard of the ordinary care that a reasonably prudent person would exercise under all the pertinent circumstances. *Corbin,* 648 S.W.2d at 295. Thus the occupier's duty to protect invitees against the reckless or criminal acts of third persons is determined by whether the risk of harm from such conduct is unreasonable under the circumstances. A risk is unreasonable if it is of such magnitude as to outweigh what the law regards as the utility of the alleged negligent act or omission. RESTATEMENT § 291. Accordingly, if the probability of the reckless or criminal acts of third persons is relatively slight, the utility of the occupier's operation is great, and the burden of protective action would be substantial, a reasonable occupier may ignore the risk and proceed on the assumption that reckless or criminal acts of third persons will not intervene. *See* RESTATEMENT, § 302A, comment d.

■ This rule is based on the principle that the occupier is not an insurer, and although reckless and criminal acts do occur occasionally and thus may be foreseeable in a broad sense, the occupier has no duty to guard against dangers that he cannot reasonably foresee in the light of common or ordinary experience. *City of Dallas v. Maxwell,* 248 S.W. 667, 670 (Tex. Comm'n App.1923, holdings approved). Thus where the injury results from loss of entire direction and control of a vehicle, the occurrence "falls within the domain of the unusual and extraordinary, and, therefore, in contemplation of law, of the unforeseeable." *Maxwell,* 248 S.W. at 671. In *Maxwell,* the supreme court held that if the city had a duty to erect a barrier along a roadway, that duty did not extend to erecting the kind of barrier necessary to stop an automobile that had become ungovernable because of a steering failure. 248 S.W. at 673.

This court reached a similar conclusion in *Watkins v. Davis,* 308 S.W.2d 906, 909 (Tex.Civ.App.—Dallas 1957, writ ref'd n.r. e.), in which the owner of a drive-in grocery was held not liable for injuries to a customer because of failure to erect a curb or barrier that would have prevented a truck, which had been parked in front with its motor running, from suddenly lunging forward and crashing into the store. The court held that an owner of premises is not responsible for an occurrence that is merely possible according to occasional experience—only for a consequence that is probable according to ordinary and usual experience. 308 S.W.2d at 909. The court said that the principle of nonforeseeability, as explained in *Maxwell,* was controlling, observing that the lack of a curb had not contributed to the initial forward movement of the truck. 308 S.W.2d at 909.

■ The RESTATEMENT states rules determining whether the intervening act of

a third person is a "superseding cause" that relieves a defendant of liability, even when his negligence is in some sense causally related to the plaintiff's injury. RESTATEMENT, §§ 440–448. Section 442 provides:

> The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:
>
> (a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operations;
>
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
>
> (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
>
> (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;
>
> (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

Application of every one of these considerations to the undisputed facts of the present case points to the conclusion that the reckless act of the drunken driver was a superseding cause of the plaintiff's injuries: (a) neither defendant is alleged to have been guilty of any negligent act or omission that could have caused any harm to plaintiffs without the intervention of the reckless driver; (b) the reckless act appears to have been extraordinary rather than normal in view of the circumstances, which did not include any similar reckless act in the vicinity; (c) the reckless act was independent of any situation created by either the lessor or the lessee and was not a normal result of any situation created by either of them; (d) the intervening force was due entirely to the driver's act; (e) the intervening act of the driver was such as to subject him to liability to plaintiffs; (f) the act of the driver was more than ordinarily culpable, in that it was reckless to the point of criminal responsibility.

Section 447 of the RESTATEMENT recognizes that the negligent intervening act of a third person is not necessarily a superseding cause if "a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third party had so acted." We conclude that in the present case, although the defendants, like any possessor of land adjacent to streets and driveways, may have been able to realize that an intoxicated or reckless driver might crash into the building, the risk of such an occurrence was so slight and this unprecedented occurrence was so extraordinary that a reasonable person would disregard it. Moreover, applying the balancing test of RESTATEMENT, section 291, we hold as a matter of law that no reasonable occupier of land, situated as was the lessor in this case, would go to the expense of erecting barriers around all the buildings adjacent to the parking lot to prevent such an extraordinary and unforeseen occurrence. Following *Maxwell* and *Watkins*, we hold that since neither of the defendants was in any manner responsible for the driver's loss of control of the vehicle, the occurrence "falls within the domain of the unusual and extraordinary, and, therefore, in contemplation of law, of the unforeseeable." *Maxwell*, 248 S.W.2d at 671.

■ Although we have so far discussed only whether defendants had a duty to erect a barrier that would prevent a vehicle driven by a drunken driver from crashing into the building, plaintiffs' petition does not confine their allegation of negligence to the absence of a barrier. They also allege that defendants were negligent in failing to warn invitees such as plaintiffs of the danger. However, the summary judgment

proof affirmatively shows that the crash occurred so suddenly that defendants had no notice of its impending occurrence. Moreover, it is obvious that a sign or other warning in or near the "porte cochere" would not have deterred customers of Confetti's from waiting in line there. In view of the remoteness of the risk, a sign warning "Watch out for reckless drivers," or "Stand here at your own risk," would have made no sense to an ordinary person standing in the "porte cochere," who would not have perceived any greater hazard there than at any other location adjacent to the parking area. It follows that the defendants had no duty to warn them of such a remote possibility, and, likewise, had no duty to erect a barrier around the building to protect them from it.

■■■ The defendants have emphasized that the intervening act was not merely negligent, but criminal, and have pointed to proof that the driver was, in fact, convicted of aggravated assault. Accordingly, they have cited authorities such as *Yarborough v. Erway*, 705 S.W.2d 198, 203–04 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.), and *Castillo v. Sears, Roebuck & Co.*, 663 S.W.2d 60, 66 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.), holding that an occupier of land is not liable to an invitee for a sudden and unexpected criminal attack when there has been no history of other violent crimes in the area. These authorities are relevant because, although the driver was convicted of a reckless rather than an intentional crime, the degree of culpability of the third party's intervening act is an important consideration bearing on whether the occupier should have realized the hazard, as recognized by section 442(f) of the RESTATEMENT, above quoted.

Plaintiffs rely on *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex. 1985), in which an apartment owner was held liable for injuries to a child who was abducted on other premises, dragged into a vacant apartment owned by the defendant, and raped. Evidence revealed that the owner had violated an ordinance requiring the doors and windows of a vacant structure to be securely closed in order to prevent unauthorized entry. *Nixon* does not control here for three reasons. First, the court held that violation of the ordinance was negligence per se and constituted breach of a duty toward the plaintiff, who, as a member of the public, was within the class that the ordinance was designed to protect. In the present case, no ordinance imposed a duty to erect barriers around the building. Second, the supreme court in *Nixon* recognized that under section 448 of the RESTATEMENT the intentional tort or crime of a third person is ordinarily a superseding cause of harm to another, but held that under that section the owner's failure to lock the doors and windows of the vacant apartment provided the rapist an *opportunity* to commit the crime and thus was an actual cause of the crime. In the present case, the absence of barriers around the building could in no sense be considered a cause of the drunken driver's loss of control of his vehicle. Third, the *Nixon* holding rests on evidence that a variety of violent crimes against both persons and property at and near the scene of the rape had been reported to the police before the attack. Here there was evidence that no patrons or pedestrians had been struck by automobiles in the area and that no automobiles had collided with buildings. According to the deposition of the security guard, Larry Hughes, there had been a few cases in which rowdies and intoxicated persons had been evicted from bars. He also suspected that some of the drivers in the parking area had been drinking, but he related no instances of obviously intoxicated drivers and none in which vehicles had been driven erratically or had been allowed to get out of control. Thus, even if all of plaintiffs' evidence is taken as true, there was no evidence of any previous instance of reckless or criminal conduct threatening the safety of invitees inside buildings adjacent to the parking area. Rather, the undisputed summary-judgment proof shows the contrary.

The principal circumstance alleged as raising a fact issue as to whether the defendants should have realized that intoxicated drivers presented an unreasonable risk of injury to customers waiting in the "porte cochere" is the proximity of several establishments serving alcoholic beverages and several occasions on which intoxicated persons had been evicted from these establishments for rowdy behavior. In an analogous case, *Yarborough v. Erway*, 705 S.W.2d 198, 203–04 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.), the court held that the potential violence inherent in drinking establishments does not put a bar operator on notice of a danger to its customers from a criminal attack. The *Yarborough* court held:

> We are mindful of the cases cited by Appellee, especially those from the Minnesota Supreme Court, which emphasize the potential for violence which is inherent in drinking establishments. We note also the testimony of several witnesses that the potential for violence is greater in places where alcohol is sold. However, viewing in its most favorable light only that evidence which supports the verdict, we find no evidence of probative value which put the employees on notice or should have alerted them that a dangerous or threatening situation existed between Erway and Henderson.

Plaintiffs also rely on *McAllen Kentucky Fried Chicken No. 1 v. Leal*, 627 S.W.2d 480, 482 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.), in which an automobile crashed into a restaurant from a parking area as a result of brake failure. Although no similar incident had occurred before, the appellate court upheld findings of negligence and proximate cause, observing that the court could not say as a matter of law that the restaurant operator could not reasonably anticipate that an automobile might run into the building and cause injury to persons within. 627 S.W.2d at 482. In that case, there was no indication that the driver's conduct was criminal; consequently, there was no occasion to apply the rule that the criminal conduct of a third person is a superseding cause. Moreover,

we decline to follow *Leal* because we regard it as contrary to the supreme court's holding in *Maxwell*, as well as our own decision in *Watkins*, in both of which comparable occurrences were held to be so extraordinary as not to be reasonably foreseeable.

In response to the lessor's motion for summary judgment, plaintiffs filed an engineer's affidavit which, they contend, raises a fact issue on foreseeability. This affidavit was not before the trial court when it granted the lessee's motion for summary judgment, and therefore is considered only on the question of the lessor's liability. After reciting the engineer's qualifications, this affidavit states:

> In my opinion a barrier in front of the porte-cochere of Confetti's would have prevented the accident which resulted in injuries to the Plaintiffs. It is also my opinion that without such a barrier the premises of Confetti's would be dangerous and unsafe. It is also my opinion that the parking lot upon which this accident occurred is unreasonably dangerous. It is also my opinion that the accident which occurred was one which might reasonably have been anticipated based upon the condition of the premises.

This affidavit states no facts to support the engineer's conclusions. We do not regard his unsupported opinion as probative because, although the affiant may be an expert in the field of engineering, the question of dangerousness and foreseeability in this case is not a matter of engineering, but of law. As explained in the opinion in *Maxwell* and *Watkins*, as well as the other authorities cited, the extent of an occupier's liability for the intervening act of a third person is determined by the court in the light of various policy considerations. Thus the expression "cannot be foreseen" is used in a qualified rather than an absolute sense as denoting matters that cannot be foreseen in the light of ordinary experience and would exclude that degree of prescience that would require speculation as to conceivable results. *Maxwell*, 248

S.W.2d at 670. We cannot determine from the affidavit what standard the engineer employed in concluding that the parking lot was "unreasonably dangerous" and that the action "might reasonably have been anticipated based on the condition of the premises." These opinions embrace legal questions on which expert opinion is not competent. *Snow v. Bond,* 438 S.W.2d 549, 550–51 (Tex.1969) (medical expert's opinion on what constitutes negligence or malpractice); *Carr v. Radkey,* 393 S.W.2d 806, 813 (Tex.1965) (whether testator has mental capacity to make a will); *Lindley v. Lindley,* 384 S.W.2d 676, 682 (Tex.1964) (whether testatrix was suffering from "insane delusion"); *Phoenix Assurance Co. v. Stabaugh,* 127 Tex. 308, 94 S.W.2d 428, 429 (Tex.1936) (whether a reasonably prudent owner would have used the remnant of a house left standing after a fire); *Houston & T.C.R.R. v. Roberts,* 101 Tex. 418, 108 S.W. 808, 809–10 (1908) (opinion of cattleman concerning reasonable time for transportation of livestock). The authority of these cases is not affected by rule 704 of the Texas Rules of Evidence, which states that an opinion is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. J. Sutton, *Opinions and Expert Testimony,* TEXAS RULES OF EVIDENCE HANDBOOK, 20 HOUSTON L.REV. 704 (1983).

Also directly on point here is *Castillo v. Sears, Roebuck & Co.,* 663 S.W.2d 60, 65–66 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.), in which the affidavit of a security expert was held not to raise an issue of fact as to whether a store owner and the operator of a shopping mall had a duty to protect a customer from criminal attacks of third persons in the absence of evidence that the defendants knew or had reason to know that such acts were occurring or about to occur.

■ We hold that without evidence of extraordinary circumstances such as proof of similar criminal or reckless conduct in the area, neither the lessor nor the lessee had the duty to protect customers against such an extraordinary and unprecedented occurrence as that shown by the undisputed summary-judgment proof. Consequently, the trial court properly rendered summary judgment for the lessor and lessee.

Appellees' motion for rehearing is granted, our former opinion is withdrawn, our former judgment is set aside, and the judgment of the trial court is affirmed.