**Darrow GARNER, Appellant,**

v.

**Darlene McGINTY, d/b/a Hair Naturally, Appellee.**

**No. 3–88–108–CV.**

Court of Appeals of Texas, Austin.

May 31, 1989.

Rehearing Denied June 21, 1989.

Gillis E. Reavis, Brothers, Reavis & McGinnis, Austin, for appellant.

Doug Lackey, Brown, Maroney, Rose, Barber & Dye, Austin, for appellee.

Before POWERS, GAMMAGE and JONES, JJ.

---

**3.** *See Castillo v. State,* No. 04–88–00135–CR, this    day decided and affirmed.

JONES, Justice.

This appeal arose from a personal injury suit. Darrow Garner, appellant, sued Darlene McGinty d/b/a Hair Naturally, appellee, alleging negligence in failing to protect him against the criminal attack of a third person while Garner was at her business. At trial, after Garner presented his evidence, the court granted an instructed verdict that Garner take nothing. We will affirm the judgment.

The trial court granted McGinty's motion for instructed verdict on the basis that Garner failed to present any evidence establishing: (1) that McGinty owed a duty to Garner to protect him against the criminal attack of the third person; (2) that McGinty was negligent; and (3) that McGinty's negligence was a proximate cause of Garner's damages.

"When, under the evidence produced at trial before the jury, a party is entitled to a verdict as a matter of law, the court, on its own motion or that of a party, may instruct the jury as to the verdict it must return or may withdraw the case from the jury and render judgment." *Trubell v. Patten*, 582 S.W.2d 606, 609–610 (Tex.Civ.App.1979, no writ). A directed verdict can be upheld only if there is no evidence of probative force to raise fact questions. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983).

To determine whether the trial court properly instructed a verdict for McGinty, this Court must view the evidence in the light most favorable to Garner. We must indulge against the instruction every inference that properly may be drawn from the evidence, and if the record reflects any testimony of probative force in favor of Garner, we must hold the instruction improper. *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984); *see also* 3 McDonald, Texas Civil Practice § 11.28.2, at 197 (rev.ed. 1983).

After reviewing the evidence and indulging against the instruction every reasonable inference, we conclude that the instructed verdict was proper because there is no evidence of probative force to establish that McGinty owed a legal duty to Garner to guard against the criminal conduct that occurred. Because of our holding as to the duty issue, we need not address whether Garner presented evidence of McGinty's negligence or whether any such negligence was a proximate cause of Garner's damages.

On June 10, 1985, at approximately 2:00 p.m., Garner and his eight-year-old son, Jonathon, went to Hair Naturally to have their hair cut by Kari Clark, a stylist at the shop. Hair Naturally was located in a shopping center with various other businesses. A large glass window with no window coverings fronted the shop. At the time Garner and his son arrived, Clark was the only employee present. She greeted them at the front desk and then escorted Jonathon to the rear of the building to wash his hair. The record is unclear whether Garner remained in the front reception area reading a magazine or followed Clark and his son to the shampoo area. Another employee of Hair Naturally, Tracy Harrington, and a customer of hers arrived sometime later. Harrington's customer left before the criminal event.

After Clark had finished cutting Jonathon's hair, and while she was cutting Garner's hair, a dirty and poorly dressed man entered the business. No one was present at the front desk, so Clark approached the man and greeted him. The man asked the cost of a haircut and then asked the location of the restroom. Clark gave him directions and, thinking the man intended to get a haircut, informed Harrington that she had a customer.

Soon thereafter, Clark, Garner, and Jonathon heard a gasp coming from the back room where Harrington was waiting for her new client. Clark went to investigate and discovered the man pointing a gun at Harrington. The robber demanded that Harrington and Clark turn over the money in the cash drawer. The two women led him to the reception area where the cash drawer was located.

The robber then forced Clark, Harrington, Garner, and Jonathon into the restroom and demanded Garner's money. After much shouting, cursing, and waving of

the gun, and after threatening everyone with death, he held the pistol next to Garner's head, said, "This is for you," and fired. Although the gun was not pointed at Garner's head, the shot caused severe damage to his hearing. The robber then fled.

"[C]ourts have generally refrained from imposing upon one person an affirmative duty to protect others from the criminal activity of a third person. However, when certain special relationships bind plaintiffs and defendants, the courts have carved out exceptions to this no-duty rule." Page, The Law of Premises Liability § 11.2, at 292 (2nd ed. 1988) (footnote omitted). This statement is generally true as it pertains to business owners/occupiers and their business invitees. *See Castillo v. Sears, Roebuck & Co.,* 663 S.W.2d 60, 64 (Tex.App. 1983, writ ref'd n.r.e.).

An invitee is "one who enters on another's land with the owner's knowledge and for the mutual benefit of both." *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975). Clearly, Garner was an invitee.

■ An occupier of business premises is not an insurer of the safety of his invitees. *Hendricks v. Todora,* 722 S.W.2d 458, 461 (Tex.App.1986, writ ref'd n.r.e.); *see also* Prosser & Keeton, Law of Torts § 61, at 425 (5th ed. 1984). Although courts have not characterized the occupier/entrant "relationship as sufficiently special to warrant the imposition of a duty to safeguard against criminal activity," Page, § 11.2 at 292, courts have held that a premises occupier does owe an invitee a duty of reasonable care. *Rosas,* 518 S.W.2d at 536; *Castillo,* 663 S.W.2d at 64. Reasonable or ordinary care is that which a reasonably prudent person would exercise under all pertinent circumstances. *Mendoza v. City of Corpus Christi,* 700 S.W.2d 652, 654 (Tex.App.1985, writ ref'd n.r.e.); *H.E.B. Food Stores, Inc. v. Flores,* 661 S.W.2d 297, 300 (Tex.App.1983, writ dism'd).

■ An invitee who claims that a premises occupier negligently failed to prevent injury to him from the criminal act of a third person must prove the essential elements of a negligence cause of action. The three essential elements are: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Duty is the threshold issue. An individual seeking to recover must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort. *Abalos v. Oil Development Co.,* 544 S.W.2d 627, 631 (Tex.1976); *see Duff v. Yelin,* 721 S.W.2d 365, 370 (Tex.App.1986), *aff'd,* 751 S.W.2d 175 (Tex. 1988). If no duty exists, then no legal liability can arise. *R.J. Reagan Co. v. Kent,* 654 S.W.2d 532, 533 (Tex.App.1983, writ dism'd). Whether a legal duty exists is a question of law for the court and is based on the facts surrounding the event in question. *Producers Grain Corp. v. Lindsay,* 603 S.W.2d 326, 329 (Tex.Civ.App. 1980, no writ); *Jackson v. Associated Developers of Lubbock,* 581 S.W.2d 208, 212 (Tex.Civ.App.1979, writ ref'd n.r.e.).

The Restatement (Second) of Torts § 344 (1965) states that an invitor is subject to liability if someone on the premises is physically harmed by a third person and by the invitor's failure to exercise reasonable care to "(a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." Comment f to section 344 provides as follows:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either

generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

In his treatise on premises liability, Page interprets comment f as follows:

The comment [f] underscores two rather different situations in which the duty may arise. The first is when the defendant knows or has reason to know that a third party is harming or is about to harm an entrant.... *The second is when the nature of defendant's business or past experience provides a basis for the reasonable anticipation on defendant's part that the criminal activity of third persons might put entrants at risk.* In this class of cases the defendant may be liable for failing to adopt security measures which might have kept the third person from inflicting harm upon the entrant.

Page, *supra*, § 11.3 at 294 (footnotes omitted) (emphasis added). Garner's allegations fall within the second situation, i.e., that McGinty had reason to anticipate criminal activity of third persons but failed to take security measures to discourage such acts or prevent harm to invitees. Under this theory, "foreseeability is a prerequisite to the recognition of a duty...." Page, § 11.3 at 295; *see also Ronk v. Parking Concepts of Texas, Inc.,* 711 S.W.2d 409, 412 (Tex.App.1986, writ ref'd n.r.e.); *Allright, Inc. v. Pearson,* 711 S.W.2d 686, 689 (Tex.App.1986), *aff'd in part and rev'd on other grounds,* 735 S.W.2d 240 (Tex.1987). The question of duty generally turns on the foreseeability of harmful consequences. *Hendricks,* 722 S.W.2d at 460. "[D]uty is the function of several interrelated factors, the foremost and dominant consideration being foreseeability of the risk." *El Chico,* 732 S.W.2d at 311; *see also Group Hospital Services, Inc. v. Daniel,* 704 S.W.2d 870, 877 (Tex.App.1985, no writ).

In the instant appeal, both parties agree that foreseeability is the key to the existence of a duty; they disagree, however, as to what actually must be foreseen. Garner argues in his brief that "[a] duty exists when it is foreseeable that *criminal activity might occur.*" (Emphasis added.) McGinty, on the other hand, argues that "the burden is on the plaintiff to prove that the premises owner had reason to believe that there was a *likelihood that criminal acts were about to occur* [which were] likely to endanger the safety of the business invitee." (Emphasis added.)

We think that neither Garner nor McGinty argues the correct standard, for the following reasons: First, the standard set forth by Garner, that a duty exists whenever it is foreseeable that criminal activity *might* occur, is too broad. "Might" indicates an even smaller degree of possibility than "may." Webster's Third New International Dictionary of the English Language (Merriam–Webster Unabridged Ed. 1961). Any business invitor should concede that, even if unlikely, a criminal act by a third person is always a possibility. In fact, "reckless and criminal acts do occur occasionally and thus *may be foreseeable in a broad sense." Hendricks,* 722 S.W.2d at 461 (emphasis added). In *Hendricks,* the court addressed foreseeability in the context of duty and declined to follow the standard suggested by Garner in this case. The *Hendricks* court found that a business invitor did not have a duty to erect barriers around all the buildings adjacent to the parking lot to prevent an automobile from crashing through a glass window where the plaintiffs were awaiting entrance to a bar and restaurant. The court stated:

[A]lthough the defendants, like any possessor of land adjacent to streets and driveways, may have been able to realize that an intoxicated ... driver *might* crash into the building, the risk of such an occurrence was so slight and this unprecedented occurrence was so extraordinary that a reasonable person would disregard it.

*Hendricks,* 722 S.W.2d at 462 (emphasis added). By refusing to hold that invitors owe a duty to their business invitees whenever it is foreseeable that a criminal act *might* occur, the court adhered to the general rule that a business invitor is not an insurer of the safety of his invitees. *See*

*Hendricks,* 722 S.W.2d at 461; *see also* Prosser & Keeton, *supra,* § 61 at 425.

Nor do we think the standard proposed by McGinty is precisely correct. Under that standard, no duty would arise until there was "a *likelihood* that criminal acts were *about to occur.*" (Emphasis added.) Section 344 of the Restatement would impose a duty when an invitor has reason to know that criminal acts "are likely to be done," but there is no requirement of a showing of a likelihood that such acts are "about to occur." The phrase "about to" means "on the point or verge of." Webster's Third New International Dictionary of the English Language, *supra.* Comment f does use the phrase "about to occur" in the first sentence, regarding what duty is "ordinarily" imposed. The Comment goes on, however, to explain that if, as a result of factors such as past experience, the invitor should reasonably anticipate criminal conduct, *"either generally or at some particular time,* he may be under a duty to take precautions against it." (Emphasis added.) We find nothing in this language suggesting that, if the invitor has reason to know that criminal acts are likely to occur, he must also, before a duty to reasonably protect his invitees will be imposed, have reason to know that such acts are on the verge of occurring.

We recognize that *Ronk v. Parking Concepts of Texas, Inc.,* 711 S.W.2d 409 (Tex. App.1986. writ ref'd n.r.e.), supports the standard argued by McGinty. In *Ronk,* a monthly tenant of an open-air pay parking lot brought an action for negligence against the owner/lessor following an assault in the parking lot. The trial court granted summary judgment in favor of the owner. In discussing whether such a business entity owes a duty to guard against the criminal conduct of a third person, the court of appeals stated:

> [T]he operator of an open-air parking lot owes a duty to protect his business invitees from intentional injuries caused by third parties if the operator has reason to believe from what he has observed or from past experience that such acts are occurring, or that there is a *likelihood that such acts are about to occur,* on

the part of third persons which is likely to endanger the safety of the business invitee.

711 S.W.2d at 414 (emphasis added). We conclude, however, that the standard as worded in *Ronk* is too restrictive, and we decline to follow it.

■ Instead, we hold that a business invitor owes a duty to his business invitees to take reasonable steps to protect them from intentional injuries caused by third parties if he knows or has reason to know, from what he has observed or from past experience, that criminal acts are likely to occur, either generally or at some particular time. *See Walkoviak v. Hilton Hotels Corp.,* 580 S.W.2d 623, 625 (Tex.Civ.App. 1979, writ ref'd n.r.e.).

Having defined McGinty's duty in the abstract, we must now determine whether she had reason to know that a criminal act was likely to occur. Accordingly, we must examine the evidence in the light most favorable to Garner, to determine whether there is any evidence of probative force in his favor.

Garner introduced the following evidence relevant to the issue of whether McGinty had reason to know that there was a likelihood that criminal acts would occur:

(1) Garner testified that Clark told him that Hair Naturally had been robbed before, that she had told her employer that she did not like being left at the shop alone all day, and that her employer had not responded to her complaint.

(2) Shortly after Hair Naturally moved into the shopping center, on April 28, 1983, someone broke into the business at night, after business hours, and took $400.

(3) A month later, on the night of May 28, 1983, someone broke into Hair Naturally but did not take anything.

(4) Three or four months before the incident in question, at night, someone burglarized another business in the same shopping center.

(5) On May 4, 1985, approximately $300 or $400 disappeared from the deposits

of Hair Naturally. The cause of the shortage was never discovered.

(6) Clark recalled two or three discussions with McGinty, over a period of two years, pertaining to how employees should respond in a robbery situation.

(7) McGinty told her employees that in the event of a robbery, they should give the money to the robber, and then after the robber had left, call the police.

(8) The front of the business had large windows, which were not covered. On the day in question, only two of the three employees of Hair Naturally were present at the shop and neither employee was sitting at the front desk.

McGinty asserts that the above-mentioned evidence does not constitute probative evidence of a reason to know there was a likelihood that a robbery would occur. Garner takes the position that the evidence establishes not only knowledge of a likelihood, but also that, in counseling her employees how they should respond in the event of a robbery, McGinty *"actually* anticipated the very sort of attack that occurred."

In support of the proposition that McGinty actually anticipated the very attack that occurred, Garner cites *Blaustein v. Gilbert–Dallas Co.,* 749 S.W.2d 633 (Tex.App. 1988, no writ). There, Blaustein rented an apartment from Gilbert Properties and, prior to moving in, specifically requested the apartment manager to change the locks. The lease contract itself provided that upon payment of a reasonable charge, a resident could require the owner to change a door lock. The manager refused, and an assailant subsequently raped the tenant after making a non-forcible entry into her apartment. The court of appeals found that the tenant's lease contract created an affirmative duty on the part of the landlord. 749 S.W.2d at 634. After determining that the landlord did owe a duty to Blaustein, the court then discussed foreseeability in the context of proximate cause. The court held that a material fact question existed as to whether the landlord realized or should have realized that other, unauthorized persons may have had access to Blaustein's apartment and thus anticipated the danger created by his refusal to change the lock. 749 S.W.2d at 635.

Garner argues that the instant appeal is similar because there was evidence that Clark expressed her discomfort at being left alone at work, and McGinty did not respond. However, there are critical differences between the present appeal and *Blaustein.* For instance, in the instant case we are concerned with foreseeability in the context of duty. The duty in *Blaustein* was provided by the lease agreement, and the court's discussion of foreseeability was in the context of proximate cause. The "foreseeability" of the duty issue and the "foreseeability" of the proximate cause issue have some similarities, but their application is not identical. Accordingly, the court's finding of proximate cause does not guarantee that a duty would have been found in the absence of the lease contract. Furthermore, *Blaustein* does not discuss "actual anticipation," which is the reason Garner claims he relies on that case.

Finally, we cannot say that counseling her employees about how to respond in the event of a robbery demonstrates that McGinty knew that a daylight robbery would occur or was likely to occur. We conclude that Garner's argument is unpersuasive and that the evidence does not establish that McGinty actually anticipated a robbery.

Garner argues that even if McGinty did not actually anticipate the crime, sufficient evidence of prior criminal activity at or near McGinty's place of business was introduced to have given McGinty reason to know a robbery was likely. In reviewing this contention, Garner urges this Court to look at the "totality of the circumstances": all those circumstances which may have placed McGinty on notice of a dangerous condition, as that rule is set out in *Isaacs v. Huntington Memorial Hosp.,* 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653 (1985), and *Morgan v. Bucks Assoc.,* 428 F.Supp. 546 (E.D.Penn.1977). Garner argues that

we should not follow the "prior similar incidents rule," whereby McGinty would only be responsible for anticipating crimes which were of the same type as prior crimes on her premises. Under this rule, knowledge of prior crimes against property would not create a duty to take steps to prevent crimes against persons. Garner seems to fault the *Ronk* case for adhering to that rule. *Ronk*, however, *does not* stand for that proposition. In fact, the court in *Ronk* declined to follow the prior similar incidents rule, and reviewed the facts of that case under the totality-of-the-circumstances standard. *Ronk*, 711 S.W.2d at 419.

We believe that "totality of the circumstances" is the correct standard. In so holding, we do not hold that the similarity or dissimilarity of prior incidents has no bearing on the issue of foreseeability. Rather, we hold only that a lack of prior similar incidents does not necessarily preclude a finding of foreseeability and the resulting existence of a duty to protect business invitees.

■ The evidence presented by Garner does not show that McGinty had reason to know that criminal activity dangerous to her invitees was likely to occur. One burglary and one break-in, both of which occurred at night more than two years before Garner was injured, would not lead even the most cautious business owner to anticipate a daring armed robbery in broad daylight. A three-or-four-month-old burglary at another business in the same shopping center would raise little more concern. The significance of the recent missing deposits must be largely discounted, since it was never determined if that even resulted from criminal activity. At best, the evidence cumulates to show a reason to know that criminal activity *might* occur. That, however, is not sufficient to create a duty to take precautions against harm intentionally inflicted on invitees.

Garner cites the following Texas cases for support: *Allright, Inc. v. Pearson*, 711 S.W.2d 686 (Tex.App.1986), *aff'd in part and rev'd on other grounds*, 735 S.W.2d 240 (Tex.1987); *Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623 (Tex.Civ.App. 1979, writ ref'd n.r.e.); and *Morris v. Barnette*, 553 S.W.2d 648 (Tex.Civ.App.1977, writ ref'd n.r.e.). We have reviewed these cases and find them to be unpersuasive under the facts of the instant appeal.

From our review of the totality of the circumstances, we hold that Garner did not present sufficient evidence to raise a genuine issue of material fact regarding the issue of whether McGinty, as owner/operator of the beauty salon, had reason to know that a criminal act such as that which injured Garner was likely to occur. Therefore, Garner did not carry his burden to prove that McGinty owed him a duty to take reasonable steps to protect him from the criminal acts of a third person. Without a duty, there can be no liability and the trial court was correct to instruct a verdict in favor of McGinty. Garner's point of error is overruled.

We affirm the judgment of the trial court.