COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
MICHAEL GIBBS,                                             )                  No. 08-02-00037-CV
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  14th District Court
)
SHUTTLEKING, INC., LOUISIANA                )                  of Dallas County, Texas
RIVERBOAT GAMING PARTNERSHIP         )
D/B/A ISLE OF CAPRI CASINO-BOSSIER    )                  (TC# 97-07084-A)
CITY, MARTY NEGOSLAWSKI,                    )
MITCHELL GOLDMINZ, and                           )
MARVIN ALGER,                                             )
)
                                    Appellees.                        )

O P I N I O N

            This case arises from a bus hijacking in which the driver, Michael Gibbs, was seriously
injured. He appeals the summary judgment granted in favor of his employers -- ShuttleKing Inc.,
Louisiana Riverboat Gaming Partnership, Marty Negoslawski, Mitchell Goldminz, and Marvin
Alger.


 Appellees will be referred to collectively as ShuttleKing. At issue is the foreseeability of
the criminal conduct of the hijackers. We affirm.
FACTUAL SUMMARY
            As a bus driver for ShuttleKing, Gibbs drove passengers from Dallas to the Isle of Capri
Casino in Bossier City, Louisiana. On November 7, 1996, three passengers pulled weapons and
hijacked the bus in Tyler, Texas. Gibbs was shot and seriously wounded during the robbery. He
sued ShuttleKing for negligence, alleging that it failed to provide a reasonably safe workplace. In
particular, he complained that ShuttleKing (1) failed to check passengers’ luggage; (2) allowed
passengers to enter unattended buses; (3) allowed hijackers to enter the bus with weapons; (4) failed
to provide an adequate means of communication so that Gibbs could advise ShuttleKing of danger;
(5) failed to provide him with an adequate means to secure funds from the sale of tickets; (6) failed
to instruct or properly instruct employees on security measures; and (7) failed to instruct or properly
instruct employees to not leave buses unattended. Gibbs contended that he suffered severe injury
to his head, face, left hand, and to his body generally. He sought medical expenses, lost wages and
loss of earning capacity, physical pain and suffering, mental anguish, disability, and disfigurement. 
                                                    PROCEDURAL SUMMARY
              Gibbs sought recovery on both negligence and promissory estoppel theories.


 The trial court
inititally granted partial summary judgment dismissing the negligence claims. The promissory
estoppel issue was tried to a jury, and Gibbs was awarded $150,000 in damages. The Eastland Court
of Appeals determined that the judgment was interlocutory since it failed to address all claims and
parties. On remand, the trial court signed an amended final judgment which incorporated both the
partial summary judgment on the negligence issues and the judgment on the jury verdict. Gibbs has
appealed only the summary judgment as to negligence. He asks us to affirm the judgment as it
pertains to promissory estoppel.
            We abated the appeal after Negoslawski filed for bankruptcy. The bankruptcy court
discharged Negoslawski from his obligations on December 11, 2002. Gibbs concedes that he cannot
resume his action against Negoslawski in a personal capacity. Consequently, he has waived
collection of any judgment from Negoslawski personally and has restricted his collection of any
damages to insurance covering Negoslawski’s liability, to the co-defendants, or to other responsible
third parties. We have reinstated the appeal and consider it now on the merits.
ISSUES ON APPEAL
            In his first issue for review, Gibbs generally complains that the trial court erred by granting
summary judgment on the negligence issues. He contends that the evidence submitted in his
response raised a fact issue as to whether the risk of harm to drivers and passengers was foreseeable. 
His remaining three issues deal with the applicability of Timberwalk Apartments, Partners, Inc. v.
Cain, 972 S.W.2d 749 (Tex. 1998). In Issue Two, Gibbs posits that a defendant can be held liable
for the criminal acts of a third party if it knows of an unreasonable and foreseeable risk to the
plaintiff. He then asks whether the bus hijacking was foreseeable by ShuttleKing. In Issue Three,
he queries whether Timberwalk applies when the nature of the business, as opposed to the premises
of the business, created the risk of criminal conduct. In Issue Four, he questions whether the
Timberwalk foreseeability factors apply to a moving vehicle. 
STANDARD OF REVIEW
            A no-evidence summary judgment is proper only when the non-movant fails to prove there
is a genuine issue of material fact on one or more of the elements identified in the motion.
Tex.R.Civ.P. 166a(i). A no-evidence summary judgment is essentially a pretrial directed verdict,
and we apply the same legal sufficiency standard that we apply in reviewing a directed verdict.
Marsaglia v. University of Texas, El Paso, 22 S.W.3d 1, 3 (Tex.App.--El Paso 1999, pet. denied).
The motion should be granted if the non-movant fails to bring forth more than a scintilla of probative
evidence to raise a genuine issue of material fact as to an essential element of the non-movant’s
claim on which the non-movant would have the burden of proof at trial. Marsaglia, 22 S.W.3d at
4. If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded
persons to differ in their conclusions, then more than a scintilla of evidence exists. Id. Less than a
scintilla of evidence exists when the evidence is “so weak as to do no more than create a mere
surmise or suspicion” of a fact, and the legal effect is that there is no evidence. Id.
THE MOTION AND RESPONSE
            ShuttleKing filed both no-evidence and traditional motions for summary judgment. The no-evidence motion relied upon Timberwalk and argued that Gibbs failed to establish the duty element
of negligence. In his response, Gibbs claimed that Timberwalk was inapplicable because the case
at bar did not involve a dangerous premises condition. Instead, he argued his suit was predicated on
a negligent activity within the ambit of Keetch v. Kroger Co., 845 S.W.2d 262 (Tex. 1992). Alleging
that the risk of harm was foreseeable and that ShuttleKing had actual subjective awareness of the
risks involved, he claimed ShuttleKing owed him a duty of ordinary care and a duty to provide a safe
workplace. He also claimed the existence of a special relationship. Finally, he contended that
ShuttleKing owed a high duty of care to its passengers since it was a common carrier, and Gibbs was
a necessary and unintended/intended beneficiary.


 
            In his affidavit, Gibbs averred that he had complained to Safety Director Lonnie Self about
the risk of robbery due to the presence of large amounts of cash from ticket sales. Several other
drivers had also complained to management. The affidavit of driver Joyce Bridwell revealed that
she had complained to both Alger and Negoslawski. Yet another driver, Milton Kelly, had reported
to Self and Alger in 1995 that a bus carrying passengers to Las Vegas in a similar operation had been
hijacked. When Kelly voiced concerns about security, Self belittled them to the extent that Kelly
believed the company did not take the dangers seriously. 
            Charter Sales Manager Priscilla Mantle acknowledged that a regular topic at management
meetings was the risk associated with accepting cash for the sale of tickets on the casino charter
buses. This was a particular concern since the Department of Transportation required the buses to
stop for a roadside check between Dallas and Bossier City, often at night and in desolate areas. Bus
drivers had also complained about the cash sales and the dangers associated with them, and some
refused to drive the night run. Cash sales were temporarily halted but were later reinstated due to
a decline in ticket revenues. Alger expressed concerns about the danger of cash collections. 
Management discussed having an employee travel to pick up the cash collected each night, but since
no employee had time to make the trip, the cash was left with the drivers. 
TIMBERWALK
            At the heart of this dispute is the Texas Supreme Court’s decision in Timberwalk. Inasmuch
as it weaves throughout the issues on appeal, we will begin our analysis with a review of the opinion.
There, a tenant who was raped in her apartment sued the landlord and management company for its
negligent failure to provide adequate security. 972 S.W.2d at 751. On appeal, the Supreme Court
was faced with two issues: (1) whether the plaintiff had alleged a negligent activity or a premises
defect and (2) whether the risk that a tenant would be sexually assaulted was reasonably foreseeable
to the defendants. Id. 
            The court recognized that the failure to provide adequate security against criminal conduct
is ordinarily couched in terms of premises liability. 972 S.W.2d at 753. That was particularly true
since the tenant did not assert that she was injured by or as a contemporaneous result of any activity
of the defendants. The only activity that had injured the tenant was the conduct of the rapist. Id. 
The court then addressed whether the defendants had a duty to provide security measures and
whether the likelihood of violent criminal activity within the apartment complex could have been
reasonably foreseen. Id. at 756. The opinion articulated the factors to be considered in
determining the foreseeability of third party criminal acts: (1) proximity, (2) recency, (3) frequency,
(4) similarity, and (5) publicity. Id. at 759. In a concurrence, Justice Spector suggested that other
types of evidence may also establish foreseeability, such as the nature, condition, and location of the
defendant’s premises. Id. Spector quoted the language from Restatement (Second) of Torts section
344 comment f: “If the place or character of [a] business . . . is such that [the landowner] should
reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at
some particular time, [the landowner] may be under a duty to take precautions against it . . . .” Id. 
DUTY TO PREVENT THIRD PARTY CRIMINAL ACTS
            In Issue Two, Gibbs argues that Timberwalk does not negate the common law duty to control
a third party when the defendant has the opportunity, ability, and knowledge of the necessity to do
so. To the extent he relies upon Section 318 of the Restatement (Second) of Torts, the argument is
waived as it was not raised in his response to the motion for summary judgment. Tex.R.Civ.P.
166a(c)(“Issues not expressly presented to the trial court by written motion, answer or other response
shall not be considered on appeal as grounds for reversal.”). We will consider the argument to the
extent he contends he presented sufficient evidence that the criminal acts were foreseeable so as to
defeat summary judgment.
            The elements of a negligence cause of action are the existence of a legal duty, a breach of that
duty, and damages proximately caused by the breach. D. Houston, Inc. v. Love, 92 S.W.3d 450, 454
(Tex. 2002). Generally, a person has no legal duty to protect another from the criminal acts of a third
person. Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). An exception to the
general rule is that one who controls premises has a duty to use ordinary care to protect invitees from
criminal acts of third parties if it knows or has reason to know of an unreasonable and foreseeable
risk of harm to the invitee. Lefmark Mgmt Co. v. Old, 946 S.W.2d 52, 53 (Tex. 1997). Gibbs, as
an employee, would be classified as an “invitee” on ShuttleKing’s premises. See Guerrero v.
Memorial Medical Center of East Texas, 938 S.W.2d 789, 791 (Tex.App.--Beaumont 1997, no pet.),
citing Hernandez v. Heldenfels, 374 S.W.2d 196, 197 (Tex. 1963). Ordinarily, this duty does not
include preventing criminal acts of third parties over whom the premises owner has no control. Id.;
see also Timberwalk, 972 S.W.2d at 756. However, in a landlord-tenant relationship, a landlord who
retains control over the security and safety of the premises has been found to owe a duty to a tenant,
a tenant’s employee, and a tenant’s guest to use ordinary care to protect the employee against an
unreasonable and foreseeable risk of harm from the criminal acts of third parties. See Exxon Corp.
v. Tidwell, 867 S.W.2d 19, 23 (Tex. 1993); Nixon v. Mr. Property Management Co., Inc., 690
S.W.2d 546, 549 (Tex. 1985); Haight v. Savoy Apartments, 814 S.W.2d 849, 853-54 (Tex.App.--Houston [1st Dist.] 1991, writ denied). 
            Thus, the foreseeability of an unreasonable risk of criminal conduct is a prerequisite to
imposing a duty of care on one who owns or controls premises to protect others on the property from
the risk. Timberwalk, 972 S.W.2d at 756. While only a general danger and not the precise sequence
of events must be foreseeable, when the general danger is the risk of injury from criminal activity,
there must be evidence of specific previous crimes on or near the premises. Id. Crime may be
visited upon virtually anyone at any time or place, but criminal conduct of a specific nature at a
particular location is never foreseeable merely because crime is increasingly random and violent and
may possibly occur almost anywhere, especially in a large city. Id., citing Lefmark, 946 S.W.2d at
59. If a landowner had a duty to protect persons on its property from criminal conduct whenever
crime might occur, the duty would be universal. Id. A duty exists only when the risk of criminal
conduct is so great that it is both unreasonable and foreseeable. Id. Whether the risk was foreseeable
must not be determined in hindsight but rather in light of what the premises owner knew or should
have known before the criminal act occurred. Id. at 757. In determining whether the occurrence of
certain criminal conduct on a landowner’s property should have been foreseen, courts should
consider whether any criminal conduct previously occurred on or near the property, how recently it
occurred, how often it occurred, how similar the conduct was to the conduct on the property, and
what publicity was given the occurrences to indicate that the landowner knew or should have known
about them. Id. The factors must be considered together in determining whether criminal conduct
was foreseeable. Id. at 759.
Proximity
            For a landowner to foresee criminal conduct on property, there must be evidence that other
crimes have occurred on the property or in its immediate vicinity. Id. Criminal activity occurring
at a distance from the landowner’s property bears less relevance because crime rates may be expected
to vary significantly within a large geographic area. Id. This is not to say that evidence of remote
criminal activity can never indicate that crime is approaching a landowner’s property. Id. But such
evidence must be especially strong, and must show that the risk of criminal conduct on the
landowner’s property is not merely increasing but has reached a level as to make crime likely. Id. 
            Most courts have looked to narrow geographic areas in analyzing the foreseeability of
criminal conduct. Id. While a few courts have examined criminal activity occurring in broader
geographic areas, statistics regarding large or undefined geographic areas do not by themselves make
crime foreseeable at a specific location. Id. Even if a city’s overall crime rate has risen, specific
areas within the city may remain crime free. Id. Likewise, merely because several crimes have
occurred at a particular ATM located in a high-crime area does not render it more likely that future
crimes will occur at every ATM the bank owns. Id. For a risk to be foreseeable, there must also be
evidence of criminal activity within the specific area at issue, either on the landowner’s property or
closely nearby. Id. 
Recency/Frequency
            Foreseeability also depends upon how recently and how often criminal conduct has occurred
in the past. Id. at 757-58. The occurrence of a significant number of crimes within a short time
period of time strengthens the claim that the particular crime at issue was foreseeable. Id. at 758. 
On the other hand, the complete absence of previous crimes, or the occurrence of a few crimes over
an extended time period, negates the foreseeability element. Id. 
Similarity
            Although the previous crimes must be sufficiently similar to the crime in question as to place
the landowner on notice of the specific danger, the prior crimes need not be identical. Id. For
example, a string of assaults and robberies in an apartment complex make the risk of other violent
crimes, like murder and rape, foreseeable, but a spate of domestic violence in the complex does not
portend third party sexual assaults or robberies. Id. 
            Assessing this factor is difficult because “[c]riminal activity is not easily
compartmentalized.” Id., citing Jardel Co. v. Hughes, 523 A.2d 518, 525 (Del. 1987). While
property crimes may expose a dangerous condition that could facilitate personal crimes, as when
apartments are targeted repeatedly by thieves, vandalism to automobiles in an apartment complex’s
parking lot can be a serious concern, but it does not suggest the likelihood of sexual assault. Id.
Publicity
            The publicity surrounding the previous crimes helps determine whether a landowner knew
or should have known of a foreseeable danger. Id. A landlord often has actual knowledge of
previous crimes occurring on the premises through tenants’ reports, and actual notice of past
incidents strengthens the claim that future crime was foreseeable. Id. However, unreported criminal
activity on the premises is no evidence of foreseeability. Id. at 758-59. Previous similar incidents
cannot make future crime foreseeable if nobody knows or should have known that those incidents
occurred. Id. at 759. Property owners bear no duty to regularly inspect criminal records to determine
the risk of crime in the area; on the other hand, when the occurrence of criminal activity is widely
publicized, a landlord can be expected to have knowledge of such crimes. Id.
Application
            Gibbs argued that ShuttleKing as owner of the bus had the ability and responsibility to
control the third parties who were responsible for his injury. He relies on the following instances
of crime: one of ShuttleKing’s drivers learned in 1995 that a bus carrying passengers to Las Vegas
was hijacked and he advised management about the incident; the safety director was familiar with
one incident in which a bus driver shot an armed hijacker in New Jersey in 1991; management
discussed the risk associated with accepting cash for ticket sales; and management recognized the
concern arising from Department of Transportation requirements for roadside checks which often
occurred at night in desolate areas.
            ShuttleKing offered evidence that it operated buses in twenty-nine states and the District
of Columbia. It had operated the Dallas-Bossier City run more than 1,400 times in the previous
twenty-two months without a comparable incident. It presented news articles from The New York
Times reporting three similar incidents. Of these, two were in the New York City area and one was
in California. Whether the New Jersey hijacking constituted one of the New York incidents is not
clear from the record. Nor is it clear whether the Las Vegas hijacking coincided with the California
incident. It is clear that the owners of ShuttleKing were not subscribers of the newspaper. Gibbs
offered no evidence that any crimes had occurred on ShuttleKing’s bus lines or on other bus lines
traveling on casino runs between Dallas and Louisiana. Nor did he provide evidence to show
recency or frequency of crimes occurring on similar bus lines. The occurrence of few crimes over
an extended period of time or the absence of previous crimes negates foreseeability. Timberwalk,
972 S.W.2d at 759. Finally, Gibbs failed to provide evidence to show that the actual incidents were
similar to the crime perpetrated against him or that they were sufficiently publicized. Id. at 759.
DUTY TO PROVIDE SAFE WORKPLACE
            Also contained within Issue Two is Gibbs’ argument that ShuttleKing had a duty to provide
a safe workplace. An employer has a duty to use ordinary care in providing its employees with a safe
place to work; however, an employer does not become an insurer of its employees’ safety at work. 
Kroger Co. v. Keng, 976 S.W.2d 882, 885 (Tex.App.--Tyler 1998, review granted), aff’d, 23 S.W.3d
347 (Tex. 2000), citing Werner v. Colwell, 909 S.W.2d 866, 869 (Tex. 1995); Leitch v. Hornsby, 935
S.W.2d 114, 117 (Tex. 1996). An employer must provide rules and regulations for the safety of its
employees, furnish safe machinery and instrumentalities, provide a safe place to work, and select
careful and competent fellow servants. Kroger Co., 976 S.W.2d at 885, citing Burk Royalty Co. v.
Walls, 616 S.W.2d 911, 923-24 (Tex. 1981). It must warn employees about the hazards of their
employment and supervise their activities. Farley v. M.M. Cattle Co., 529 S.W.2d 751, 754 (Tex.
1975), overruled on other grounds, Parker v. Highland Park, Inc., 565 S.W.2d 512 (Tex. 1978). 
The test whether the employer has met its obligation is the exercise of ordinary care based on general
negligence principles. Woodlawn Mfg., Inc. v. Robinson, 937 S.W.2d 544, 548 (Tex.App.--Texarkana 1996, writ denied), citing Tidwell, 867 S.W.2d at 21. Because ordinary principles of
negligence apply, the foreseeability necessary to impute responsibility for third party criminal
conduct must be evaluated in light of Timberwalk.
            ShuttleKing owed Gibbs a duty only if the third party criminal act were foreseeable. Because
the evidence failed to establish foreseeability under the Timberwalk factors, we overrule Issue Two.
NATURE OF THE BUSINESS
            In Issue Three, Gibbs complains that the Timberwalk factors should not have been rigidly
applied in determining the foreseeability of third party criminal acts. Because the bus was not a
fixed location, the analysis should focus on the nature of the business, rather than the location of the
business. In other words, Gibbs contends that the issue is whether ShuttleKing knew or should have
known that the nature of their business was prone to attract criminal activity. 
            In support of this argument, Gibbs refers us to Section 344 of the Restatement (Second) of
Torts, Justice Spector’s concurrence in Timberwalk, and two pre-Timberwalk opinions. See
Kendrick v. Allright Parking, 846 S.W.2d 453, 454-55 (Tex.App.--San Antonio 1992, writ denied);
Garner v. McGinty, 771 S.W.2d 242, 244 (Tex.App.--Austin 1989, no writ). His reliance on the
Restatement has been waived inasmuch as he failed to address the issue in the trial court. See
Tex.R.Civ.P. 166a(c). Moreover, we are disinclined to expand the duty articulated in Timberwalk. 
The opinion defined the parameters of foreseeability for third party criminal acts, and the analysis
did not incorporate a “nature of the business” factor. Issue Three is overruled.
PREMISES LIABILITY VERSUS NEGLIGENT ACTIVITY
            In Issue Four, Gibbs first argues that since a bus is not a fixed piece of property, it does not
qualify under the definition of “premises.” Secondarily, he asserts that the case involves a negligent
activity rather than a premises defect. 
Bus as Premises
            The common definition of “premises” is “a building or part of a building with its grounds or
other appurtenances.” J.B. Advertising, Inc. v. Sign Bd. of Appeals of the City of Carrollton, 883
S.W.2d 443, 447 (Tex.App.--Eastland 1994, writ denied), citing Billstrom v. Memorial Medical
Center, 598 S.W.2d 642 (Tex.Civ.App.--Corpus Christi 1980, no writ). In Billstrom, the court
defined “premises” as “an estate, including land and buildings thereon; . . . The area of land
surrounding a house, and actually or by legal construction forming one enclosure with it. A distinct
and definite locality, and may mean a room, shop, or other definite area, or a distinct portion of real
estate.” 598 S.W.2d at 646, citing Black’s Law Dictionary 1063 (5th ed. 1979). Gibbs argues
that because Timberwalk is replete with references to “landowners” and “real property,” a bus does
not fit within the parameters of the decision. From this, he concludes that the Timberwalk
foreseeability factors do not apply.
            While a bus may not fit neatly within the definition of a “premises,” a bus utilized by a
transportation company is sufficiently similar to a “premises” to fall under the purview of the
Timberwalk factors. Although it does not constitute real property, it does constitute an asset used
by ShuttleKing in their business. The bus was Gibbs’ workplace--a definite area and locality. 
Whether a different standard would apply to a bus in use as a common carrier is an issue not
presently before us.
Negligent Activity
            Recovery on a negligent activity theory requires that the person be injured by or as a
contemporaneous result of the activity itself rather than by a condition created by the activity. 
Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992); see also Timberwalk, 972 S.W.2d at 753. 
Negligence in the context of a negligent activity means doing or failing to do what a person of
ordinary prudence in the same or similar circumstances would do. Timberwalk, 972 S.W.2d at 753. 
Negligence in the context of a premises defect means “failure to use ordinary care to reduce or
eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier
[of land] knows about or in the exercise of ordinary care should know about.” Keetch, 845 S.W.2d
at 267; see also Timberwalk, 972 S.W.2d at 753. 
            In Keetch, the plaintiff argued that Kroger exposed its customers to the unreasonable risk of
a fall by negligently conducting its plant spraying activity in an area of its store that was open to its
customers. 845 S.W.2d at 264. The court noted that a Kroger employee sprayed the plants sometime
prior to her 7 p.m. quitting time and that the plaintiff slipped on the floor and fell at approximately
7:30 pm. Id. The court found that there was no ongoing activity when the plaintiff was injured and
that while the plaintiff may have been injured by a condition created by the spraying, she was not
injured by the activity of spraying. Consequently, the injury was caused by a premises condition
rather than a negligent activity. 
            Here, Gibbs was injured as a result of the hijackers’ conduct. It was a hijacker who shot him. 
The circumstances are more akin to a premises liability claim than a negligent activity claim and
Gibbs has failed to show otherwise. Accordingly, Point of Error Four is overruled.
CONCLUSION
            Having determined that the third party criminal acts were not foreseeable under Timberwalk
and having further examined the evidence with regard to the other duties alleged, we conclude Gibbs
failed to provide more than a scintilla of probative evidence to raise a genuine issue of material fact. 
Because summary judgment was proper, we overrule Issue One. The judgment of the trial court is
affirmed. 

February 3, 2005                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 1
Larsen, McClure, and Chew, JJ.
(Larsen, J., not participating)