**ALLRIGHT SAN ANTONIO PARKING INC., Appellant,**

v.

**Suzette KENDRICK, Appellee.**

No. 04–96–00699–CV.

Court of Appeals of Texas, San Antonio.

June 17, 1998.

William L. Powers, Jennifer Gibbins Durbin, Allen, Stein, Powers, Durbin & Hunnicutt, Wallace B. Jefferson, Sharon E. Callaway, Crofts, Callaway & Jefferson, P.C., San Antonio, for Appellant.

Anthony F. Constant, Law Offices of Anthony F. Constant, Corpus Christi, J. Thomas Rhodes, III, Lyons & Rhodes, P.C., San Antonio, Frank Herrera, Jr., Law Offices of Frank Herrera, Inc. San Antonio, for Appellee.

Before RICKHOFF, LÓPEZ and ANGELINI, JJ.

## OPINION

RICKHOFF, Justice.

In this case we confront the recurring question of when to hold a premises owner liable for criminal acts committed by a third person against a customer. Because this was a random act of violence, without evidence of specific prior crimes on the property, we find it was not foreseeable.

Suzette Kendrick was abducted from a parking lot in downtown San Antonio by Larry Wayne Gross; he forced her into her own car, drove her to his apartment, raped her, and after a ten-hour ordeal released her. Kendrick sued the lot's owner, Allright San Antonio Parking, Inc. ("Allright") for negligently failing to provide for her safety. The trial court granted summary judgment; we reversed, holding that a fact question existed on whether one of Allright's servants witnessed the assault. *Kendrick v. Allright Parking*, 846 S.W.2d 453 (Tex.App.—San Antonio 1992, writ denied). The cause was not tried on this issue; rather, a jury was asked whether Allright had breached a duty to protect Kendrick from crime on its lot. The jury found for Kendrick and awarded a $4.7 million judgment.

In seven points of error Allright complains that the trial court erred in rejecting its motions for judgment non obstante veredicto and to modify the judgment because Allright owed no duty to Kendrick as a matter of law; that those motions should have been granted because the evidence was legally insufficient to support the verdict; that the evidence is factually insufficient to support the jury's finding that Allright's negligence proximately caused Kendrick's damages; that improper, surplus jury instructions were submitted; that the trial court erroneously admitted an unedited version of a deposition; that Kendrick made an improper and incurable jury argument; and that one of Kendrick's expert's reports was not submitted as required.

We find Kendrick did not carry her burden to establish that her abduction was forseeable, in a legal sense. Because this violent criminal act was not forseeable, Allright owed Kendrick no duty; absent a duty there can be no tort recovery. We therefore reverse the judgment of the trial court and render a take-nothing judgment.

## THE QUESTION OF DUTY

Allright's first point of error asserts that the trial court erred in not granting its motion for judgment non obstante veredicto or to modify the judgment because Allright owed no duty to Kendrick as a matter of law. Allright's second point of error argues the evidence was legally insufficient on the question of duty to support the jury's verdict.

The threshold inquiry in a negligence case is duty. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). The question of duty turns on the foreseeability of harmful consequences, which is the underlying basis for negligence. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex.1983). Forseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977). The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990).

In Texas, the duty owed by a premises owner or occupier is largely determined by the status of the complaining party. An "invitee" is "one who enters on another's land with the owner's knowledge and for the mutual benefit of both." *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex.1975). Generally, a premises owner or occupier owes to invitees a duty to use reasonable care to protect them from foreseeable injuries. See *Boyer v. Scruggs*, 806 S.W.2d 941, 944–45

(Tex.App.—Corpus Christi 1991, no writ). It is undisputed in this case that Kendrick was Allright's invitee at the time of the assault. The question, then, becomes whether Kendrick's injuries from this criminal act were forseeable, and whether Allright exercised reasonable care to protect Kendrick.

■ Because criminal and tortious conduct of third persons is not necessarily foreseeable to a reasonably prudent landowner, such conduct is usually a superseding cause relieving a negligent landowner from liability. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 550 (Tex.1985). In Texas, evidence of specific previous crimes on or near the premises will render a criminal act forseeable, and the premises owner will be charged with a duty to protect against crime. *Walker,* 924 S.W.2d at 377 (citing *Nixon,* 690 S.W.2d at 550).

Such evidence of specific previous crimes is completely absent from this record.

### 1. Forseeability Given the Totality of the Circumstances

■ Kendrick had the burden to establish forseeability; that is, that Allright knew that crime was a dangerous condition on this particular lot, or should have known given the totality of the circumstances, and yet elected not to warn its customers or take extra precautions. Put another way, the dangerous condition of crime had to be such a threat to Allright's customers that the precaution Allright did take—stationing an attendant instructed to look out for its customers' safety on the lot—was so inadequate that the law will still hold Allright liable for its customer's injuries.

#### a. The Evidence

The trial court excluded the police reports of crime in the area; therefore they will not enter into our duty analysis. *Ronk v. Parking Concepts of Texas,* 711 S.W.2d 409, 416 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). This means the only evidence of crime in the area of the lot was the testimony of two experts hired by Kendrick.

■ Norman Bottom testified in an affidavit that after reviewing San Antonio crime statistics, he noted that there had been six unspecified reports of nonviolent crime near the intersection where the lot was located. We note first that instances of nonviolent crime will not suffice to put a landowner on notice that violent crime is a condition for which he may be held liable. *Walker,* 924 S.W.2d at 377. Second, Bottom's affidavit did not contain a time frame when these crimes may have occurred, and he did not provide details in his trial testimony. The affidavit is vague, conclusory and without specifics.

■ Detective Anton Michalec, testifying on the police records excluded by the trial court, said that "three robberies and one officer in trouble, a suspicious person" had occurred in the previous three years near the parking lot. We think this testimony inadequate to meet *Walker*'s requirement of specificity in the evidence.

It is undisputed that none of these criminal acts could be affirmatively placed on Allright's lot. Both Michalec and Allright's expert, Merlyn Moore, agreed that the records relied on by Michalec could not place any crime on the lot because the lot did not have a street address. Michalec also indicated that some of these criminal incidents may have happened inside a bar adjacent to the parking lot. Moore added that these records generally indicated the location of the telephone from which the police were summoned, not the site of the crime itself, and there was no telephone at the lot.

Michalec also testified that, absent a subpoena, even if Allright officials suspected criminal acts occurred near the lot they could not obtain the internal San Antonio Police Department reports that *would* pinpoint the site of the actual crime because this was not released to the public. Finally, two parking lot attendants testified they were not aware of any crime on the lot in question in the years just prior to Kendrick's abduction.

#### b. The Legal Test

■ Texas courts have generally applied a "totality of the circumstances" test to the question of forseeability in a parking lot setting. *Nixon,* 690 S.W.2d at 551; *Ronk,* 711

S.W.2d at 418. Under the totality of the circumstances test, the crime must occur on the premises in question—or close enough to give notice to the owner-occupier of land—before the owner-occupier will be liable for criminal acts of third persons. *See Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623, 627 (Tex.1979) (plaintiff was robbed in hotel's parking lot; fact question on forseeability where two robberies occurred in the previous year on adjacent property and victims were brought to the hotel for assistance); *Walker*, 924 S.W.2d at 378 (where evidence showed crime around four-plex was "average," with no reports of violent crime on the premises, movants for summary judgment established lack of forseeability as a matter of law); *see also Coffee v. F.W. Woolworth Co.*, 536 S.W.2d 539, 541 (Tex.1976) (unjust to hold a landowner responsible for the conduct of a person over which he had no control unless it has a reasonable opportunity to discover the dangerous condition).

### c. Application of the Legal Test to the Facts

We find *Ronk* to be the case most factually similar to ours. In *Ronk*, a summary judgment case, the plaintiff sued after an assailant forced her into her own car and attempted to abduct her; she managed to get away when the car stalled and hit a curb. *Ronk*, 711 S.W.2d at 410. Like the lot in our case, the lot in *Ronk* was an open-air lot with a parking attendant. The reviewing court used the "totality of the circumstances" test first announced in *Isaacs v. Huntington Memorial Hospital*, 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653 (1985) and *Nixon*, 690 S.W.2d at 551, to review evidence of forseeability. The evidence mustered by the plaintiff included:

- Police reports detailing 18 offenses in the two years prior to her abduction, either on the lot or in the adjacent building where she worked. Of these offenses, five occurred on the lot in question but only one involved an assault;

- Affidavits from six of her co-workers testifying to the undesirable reputation and dangerous character of the area where the parking lot was located.

*Ronk*, 711 S.W.2d at 415.

The court in *Ronk* used as a yardstick the evidence produced by the plaintiffs in *Isaacs* to hold that Ronk's evidence did not show the assault to be forseeable. In turn, the evidence produced in *Isaacs* included:

- The hospital was located in a "high crime area";

- Several threatened assaults had occurred in the emergency room area directly across from the parking lot where the attack occurred;

- Thefts had occurred in the area;

- A hospital security guard's testimony that incidents involving harassment had been "very common";

- Two of the security lights in the parking lot were not working that night;

- While the parking lot in question had no security, another parking lot on the hospital's premises had television cameras and security guards during shift changes;

- The fact that emergency room facilities and surrounding areas are inherently dangerous.

*Ronk*, 711 S.W.2d at 418 (citing *Isaacs*, 211 Cal.Rptr. 356, 695 P.2d at 661–662).

The *Ronk* court sustained summary judgment because "appellant herein has not brought forth nearly the abundance of evidence that the plaintiff in *Isaacs* established in an effort to show that the attack by a third person should have been forseen" by the hospital. The court also noted that the evidence in *Walkoviak* was also considerably stronger than Ronk's. *Id.* at 625.

In the case before us, the evidence of forseeability is considerably weaker than in any of these cases. Unlike *Walkoviak*, there is nothing in the evidence establishing that Allright was aware of any of the criminal acts in the area. Unlike *Isaacs*, there is no testimony that customers of the lot were threatened on a regular basis, nor is there evidence that nearby lots supplied security guards or similar security measures. And unlike *Ronk*, in which it was held that the parking lot owner owed no duty as a matter

of law, we have no specific instances of violent crime on or around the lot that should have put the lot owner on notice.

Like *Ronk*, then, we use *Isaacs* as the yardstick against which we measure this question of forseeability; as in *Ronk*, we find Kendrick has provided neither the quality nor the quantity of evidence required to show Allright should be held liable for the criminal acts of a third person.

The dissent argues that the key difference between our case and the *Ronk* case is the presence or absence of expert testimony. We disagree. In *Ronk*, plaintiffs had plentiful evidence of criminal activity but no expert testimony; here we have plentiful expert testimony but no competent evidence of specific crimes on or near the lot. We have held that expert testimony alone is insufficient to raise a fact issue on forseeability in a premises liability case. *Castillo v. Sears, Roebuck & Co.*, 663 S.W.2d 60, 64–65 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). That is also the case before us today.

Intuitively, this makes sense. The wrongful conduct for which we hold a premises owner liable is when the premises owner knew that crime was a problem and yet did nothing. In that situation, we charge the party with superior knowledge with a duty to warn or safeguard its business invitees. This superior knowledge cannot come to the premises owner through the testimony of experts hired for litigation after the fact.

Kendrick argues strenuously that the forseeability of Gross's attack is established by the fact that Allright's manager's manual cautions its employees to keep an eye out for criminal activity. This misstates the question. A duty does not exist whenever it is forseeable that criminal activity *might* occur. *Garner v. McGinty*, 771 S.W.2d 242, 244(Tex.App.—Austin 1989, no writ); *Hendricks v. Todora*, 722 S.W.2d 458, 461 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) Moreover, Texas courts have assessed punitive damages when a parking company did not caution its employees to look out for its customers' safety. *Allright, Inc. v. Pearson*, 711 S.W.2d 686, 693 (Tex.App.—Houston [1st Dist.] 1986, *rev'd on other grounds*, 735 S.W.2d 240 (Tex.1987). We will not hold

Allright liable for doing that which the courts of this state have said it must do.

**e. The Law is Evolving Away from Broad Forseeability**

Recent changes in the law buttress our conclusion. The court which authored *Isaacs,*recognizing that violent crime is pervasive in our society, has narrowed the *Isaacs* totality of the circumstances test to require prior similar incidents on the premises in question. *Ann M. v. Pacific Plaza Shopping Center et al.*, 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207 (1994).

In *Ann M.* the court commented:

> Unfortunately, random, violent crime is endemic in today's society. It is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable. Upon further reflection and in light of the increase in violent crime, refinement of the rule . . . is required.

*Ann M.*, 25 Cal.Rptr.2d 137, 863 P.2d at 215.

The court explained that duty must be determined by balancing the forseeability of the crime against the burdensomeness and efficacy of potential security measures. *Id.* at 215. Considering these factors, the court stated:

> [W]e conclude that a high degree of forseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards. *We further conclude that the requisite degree of forseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises.* To hold otherwise would be to impose an unfair burden upon landlords and, in effect, would force landlords to become insurers of public safety, contrary to well-established policy in this state.

*Id.* at 215–216 (emphasis added).

One of the justices who joined in the original *Isaacs* opinion dissented in *Ann M.*, arguing that the court had in effect overruled *Isaacs*. *Ann M.*, 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 216–218 (Mosk, J., dissenting).

We also note that our own supreme court has recently taken a similar stance. In *Walker*, the court held that defendants were entitled to summary judgment where there was no evidence of prior violent crime on or around the premises. *Walker*, 924 S.W.2d at 377–378.

In light of our own state's public policy that an owner-occupier is not an insurer of its business invitees, we find the California court's reasoning persuasive.

**2. Question of Whether the Parking Lot Attendant Saw the Attack was Neither Submitted nor Established**

■ Alternatively, Kendrick urges us to affirm on the ground that the jury could have found that Allright's servant witnessed the abduction and did nothing. If Campos saw the attack take place, he (and Allright) would owe a duty to Kendrick to report that crime and otherwise aid its business invitee. *Kendrick*, 846 S.W.2d at 459; RESTATEMENT (SECOND) OF TORTS § 314A (1977). However, we find that this basis of duty constitutes an independent ground of recovery which was not submitted to the jury; therefore it was waived unless established as a matter of law, which we hold was not done. *Akin v. Dahl*, 661 S.W.2d 911, 913 (Tex.1983), *cert. denied*, 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984); *Glens Falls Ins. Co. v. Peters*, 386 S.W.2d 529, 531 (Tex.1965); TEX.R. CIV. P. 279.

We sustain Allright's first point of error.

**THE PUBLIC POLICY DIMENSION**

■ *Ronk* reaffirmed the central principle that holding a landowner liable for the acts of a third person which the landowner did not control will not be done absent compelling circumstances. It is longstanding public policy in this state that the owner-occupier of land is not an insurer of its business invitees. *See, e.g., City of Dallas v. Maxwell*, 248 S.W. 667, 671 (Tex. Comm'n App.1923, holding approved); *Garner*, 771 S.W.2d at 245; *Hendricks*, 722 S.W.2d at 461–462; *see also* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 61, at 425–426 (5th ed.1984). Under the facts of this case, to hold Allright liable for Gross's random, violent crime would be to make Allright an insurer of its customers' safety. Here the crime committed was qualitatively different from the type of crime we would expect Allright to take precautions against. Gross's attack against Kendrick was not his first and would not be his last. His decision to abduct Kendrick from a busy parking lot near San Antonio's River Walk in the middle of a Sunday afternoon was certainly unexpected and likely succeeded in part because of its sheer audacity.

■ The duty of a business to protect its customers from crime is determined by that business's setting. *See Isaacs*, 211 Cal.Rptr. 356, 695 P.2d at 653. If a business is in an area of town known for robberies, then more security would be due than if the same business was located in a low-crime area. At the same time, if that business could reasonably be required to take precautions against robbers, it would be unreasonable to require it to be prepared to repulse a random attack by a homicidal maniac. *See Toscano Lopez et al. v. McDonald's et al.*, 193 Cal.App.3d 495, 238 Cal.Rptr. 436 (Cal.App.1987) (evidence of gang activity and thefts on premises did not require imposition of liability for failure to take precautions against murderous attack by heavily armed assailant).

**CONCLUSION**

We hold that Kendrick's proof fails to show the specific instances of crime which should have put Allright on notice that an incident such as her abduction and rape was forseeable. Since Kendrick did not establish forseeability, she did not show that Allright owed her a duty, breach of which proximately caused her damages. It was therefore error for the trial court not to enter judgment non obstante veredicto in favor of Allright. Because of our disposition of this point of error, we need not address Allright's arguments on factual sufficiency or lack of a causal nexus between its behavior and Gross's attack.

The judgment of the trial court is reversed and judgment rendered that plaintiff take nothing.

LÓPEZ, Justice, dissenting.

The majority opinion concludes that the quantity and quality of prior criminal acts on or around the public parking lot prior to Appellant's abduction were not sufficient to impose a duty on Allright to warn its business invitees of potential crime or to take further steps to secure their safety. The majority further concludes that there is no evidence that Allright was aware or should have been aware of crime on or around its lot sufficient to impose these duties. I respectfully disagree with these conclusions.

### The Existence of A Duty

While I recognize that the existence of a duty is a question of law to be decided by the court from the facts surrounding the occurrence in question, *see Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995), when the facts pointing to the issue of foreseeability are in dispute, as they are in this case, the issue is to be decided by the fact finder— in this case, by the jury. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 526 (Tex.1990); *Bennett v. Span Industries, Inc.* 628 S.W.2d 470, 474 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.).

Generally, a person has no legal duty to protect another from the criminal acts of a third person or control the conduct of another. *See Siegler*, 899 S.W.2d at 197. Likewise, a property owner has no duty to prevent criminal acts of third parties who are not under the property owner's supervision or control. *See Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex.1993). This rule, however, carries a number of exceptions, one of which arises when the unsafe condition or likelihood of danger to the invitee is reasonably foreseeable. *See Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985). In *Nixon*, the supreme court stated:

> Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99, 103 [ (Tex.1977) ]. Usually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability. However, the tortfea-

sor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence.

*Nixon*, 690 S.W.2d at 549–50, citing to *Castillo v. Sears Roebuck & Co.*, 663 S.W.2d 60 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.) and *Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623 (Tex.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).

Walkoviak, a hotel patron, was injured in an attack at the adjacent hotel parking lot. He sued the hotel, claiming negligence in failing to provide adequate security against the criminal acts of others. In reversing a summary judgment on the no-duty rule, the court stated:

> The proprietor of the public business establishment has the duty to exercise reasonable care to protect his patrons from intentional injuries caused by third persons if he has reason to know that such acts are likely to occur, either generally or at some particular time. Liability for injuries may arise from the failure of the proprietor to exercise reasonable care to discover that such acts by third persons are occurring, or are likely to occur, coupled with the failure to provide reasonable means to protect his patrons from the harm or to give a warning adequate to enable the patrons to avoid the harm.

*Walkoviak*, 580 S.W.2d at 625; *see also Ronk v. Parking Concepts of Texas, Inc.*, 711 S.W.2d 409, 412–13 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.); RESTATEMENT (SECOND) OF TORTS § 344 (1965) (owner of premises liable for injury to business invitee caused by intentional harmful act of third person where owner fails to exercise reasonable care to discover act is occurring or likely to occur or fails to give adequate warning so that invitee might avoid harm, or otherwise protect invitee from harm). This duty grows out of principle that the one with the power or control of expulsion is in the best position to protect the invitee from the dangerous characteristics associated with the property. *See Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex.1993).

## Foreseeability—Other Criminal Acts Are But One Consideration

Duty arises when the property owner knows or should know of a general dangerous condition connected with the property. This knowledge need not conform to the exact sequence of events that produced the harm in question. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 387 (Tex.1989); *Nixon*, 690 S.W.2d at 550–51. All that is required is that the injury be of such a general character that the property owner should reasonably have anticipated it. *See Carey v. Pure Distributing Corp.*, 133 Tex. 31, 124 S.W.2d 847 (1939); *Allright, Inc. v. Pearson*, 711 S.W.2d 686 (Tex.App.—Houston [1st Dist.] 1986), *aff'd in part and rev'd in part on other grounds*, 735 S.W.2d 240 (Tex.1987).

Evidence of specific past crimes on or near the property, for example, may give rise to a fact issue on the foreseeability of criminal activity. *See Nixon*, 690 S.W.2d at 550. Other factors may also raise a fact issue on foreseeability. Comment f under section 344 of the Restatement of Torts, Second, suggests that the landowner may:

> know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety.of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

The *Ronk* opinion, on which the majority so heavily relies, acknowledges that "[w]hile prior similar incidents are helpful to determine foreseeability, they are not required to establish it. Other circumstances may also place the landowner on notice of a dangerous condition." *Ronk*, 711 S.W.2d at 417. A rule which directs the court to rely solely on "sufficient prior acts" would automatically bar relief to victims of first-time crimes on a particular site. *See id.*

*Ronk* is an appeal of a summary judgment—the case never went to a jury. The Fort Worth court of appeals, however, went to considerable lengths to acknowledge that the issue of foreseeability should be determined by a jury whenever a fact issue is raised. *See id.; see also Parking, Inc. v. Dalrymple*, 375 S.W.2d 758, 763 (Tex.App.—San Antonio 1964, no writ). The opinion distinguishes *Allright, Inc. v. Pearson*, where the jury heard extensive expert testimony on the foreseeability of an attack in a parking garage from a security consultant who discussed the standard of care required for a multi-story enclosed parking garage. *See Ronk*, 711 S.W.2d at 417; *Allright, Inc. v. Pearson*, 711 S.W.2d at 692 (*Allright* factually distinguished from *Ronk* because jury heard expert witness testify on foreseeability). Although *Ronk* provided evidence of seventeen criminal incidents reported on or near the site in question within a two-year period prior to the assault, the lack of expert testimony on the issue of foreseeability caused the court to affirm the summary judgment. *See Holder v. Mellon Mortg. Co.*, 954 S.W.2d 786, 797 (Tex.App.—Houston [14th Dist.] 1997, no writ) *Ronk*, 711 S.W.2d at 416–19. Here, the majority disregards expert testimony because the underlying crime incident reports upon which the expert relied were not offered as evidence.

The case at bar more closely resembles every case the *Ronk* court distinguished. Like *Isaacs*, the parking lot was located in a high crime area, the lot was devoid of security, and plaintiff's expert testified that "parking lots, by their very nature, create an especial temptation and opportunity for criminal conduct." *See Isaacs v. Huntington Memorial Hosp.*, 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653 (1985). As in *Walkoviak*, the head of the defendant's security system had made no conscious effort to review the history of criminal acts in the area adjacent to the hotel, yet police had been called to the hotel due to robberies on two previous occasions. *See Walkoviak v. Hilton Hotels Corp.* 580 S.W.2d 623, 625 (Tex.Civ.App.—Houston

[14th Dist.] 1979, writ ref'd n.r.e.) (summary judgment in favor of hotel reversed). *See also Pearson, supra.*

## Legal Sufficiency

In reviewing a "no evidence" point, we consider only the evidence and inferences that tend to support the finding, disregarding all evidence and inferences to the contrary. *Vannerson v. Vannerson,* 857 S.W.2d 659, 666 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Under this test, there must be some evidence to support the jury finding, either directly or inferentially. *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 327 (Tex.1993). If there is more than a scintilla of evidence to support the finding, the no evidence challenge must fail. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). Evidence that a reviewing court may have discounted if serving as a jury cannot be judicially erased from the record. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993); *America's Favorite Chicken Co. v. Samaras,* 929 S.W.2d 617, 628 (Tex. App.—San Antonio 1996, writ denied). In other words, we may not find the evidence legally insufficient unless we are persuaded that a "vital fact may not reasonably be inferred from the meager facts proved in the particular case." *Texas Dep't of Mental Health v. Petty,* 817 S.W.2d 707, 717 (Tex. App.—Austin 1991), aff'd, 848 S.W.2d 680 (Tex.1992) (quoting Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 TEX. L. REV. 361, 365 (1960)).

The majority concludes that there was no evidence that Allright was aware or could have become aware so that the abduction of appellee was foreseeable.[1] My review of the record, however, reveals that Dr. Norman R. Bottom, a certified security consultant and the author of the only book on the subject of parking lot and garage security, testified extensively as to Allright's existing knowledge of the inherent dangers of parking lot crime. For example, Allright, as a member of the

National Parking Association had access to such information industry-wide going back to at least 1978. Allright's internal document, known as the city manager's manual, noted in particular the potential danger to property and human life on outside parking lots. Dr. Bottom testified that Allright's city manager's manual clearly showed that Allright had actual knowledge prior to 1988 that their operation would put customers at risk. As a member of the International Parking Association, Allright had been advised to beware of the danger to customers, especially female customers, in both parking lots and garages. For a company who should be concerned about such risk to its customers, Allright could also have gone to the San Antonio Police Department and asked about the crime rates on or near their parking lot locations and sought advice on crime prevention, but did not do it. Allright could have conducted a security survey of the site, looked at crime patterns in the area, hired a security guard, installed closed circuit TV, put up warning signs, posted the property against trespassers, limited access, and trained its employees to pay close attention to the most vulnerable of its customers—the elderly, handicapped, and women. Dr. Bottom also testified that Allright could have provided written instructions to its parking lot attendants on what to do in such situations, and that Allright could have installed a telephone on the premises. Allright had not done any of these things at the time this abduction occurred.

The jury also heard testimony from Jorge Campos, the parking lot employee on site on the day of the abduction. Campos had been told to call the police and the office if he saw a crime in progress—however, Allright did not provide a telephone for this purpose. He admitted that part of his duty in 1988 was to see that a woman got into her car and off the lot safely without being attacked.

The jury also heard testimony from Anton Mihalec, a San Antonio police officer qualified as an expert on crime and foreseeability,

---

1. By contrast, when reviewing a challenge to the factual sufficiency of the evidence, we consider, weigh, and examine all of the evidence that supports and is contrary to the finding. *Vannerson,* 857 S.W.2d at 666. We will set aside the finding only if the evidence is so weak or the finding so

against the great weight and preponderance of the evidence that the finding is manifestly erroneous or unjust. *Id.* I respectfully suggest that the majority has relied upon the wrong standard because it found the evidence of foreseeability weak when based on an expert opinion.

regarding prior violent crimes on or near the lot and the fact that this lot was a dangerous place. Allright's expert, Merly Douglas Moore, testified that this lot was a model of safety, clearly putting the above-stated facts into dispute. Moore further testified, however, that a woman returning to her car at a public parking lot was a very vulnerable person. He admitted on cross-examination that he had previously testified in a Houston case that the majority of assaults or abductions in public places occur in a public lot or an open parking area. Such conflicting testimony could easily have lead the jury to find plaintiff's expert more persuasive.

The majority appears to focus on the fact that plaintiff's experts' opinions were based in part on their review of crime incident reports in the vicinity of the parking lot and that these reports were not offered into evidence. Texas Rule of Evidence 703 addresses the types of "facts or data" upon which the expert's opinion can be based.[2] As the Texas Supreme Court explained,

> Broken down into its components, the rule contemplates three sources of the "facts or data" that might underlie the expert's testimony: (1) first-hand knowledge; (2) hypothetical questions based on admitted evidence, and (3) inadmissible data, if of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. See FED. R. EVID. 703 Advisory Committee's Note; Sutton, Commentary on Expert Testimony, in TEXAS RULES OF EVIDENCE HANDBOOK 847 (2d ed.1993).

*E.I. du Pont de Nemours and Co., Inc. v. Robinson,* 923 S.W.2d 549, 562 (Tex.1995). It is not essential that the crime reports themselves be admitted into evidence for the expert to review them and base an opinion in part on them.

### Conclusion

As this court clearly noted more than thirty years ago,

> Foreseeability is an indispensable element of tort liability.... For a result to be

legally foreseeable, however, it is not required that the particular accident complained of should have been foreseen. All that is required is that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.... The issue of foreseeability is submitted to the jury as a part of the definition of 'proximate cause.'

*Parking, Inc. v. Dalrymple,* 375 S.W.2d 758 at 763 (citations omitted). In this case, the jury heard conflicting evidence and made a decision that what occurred was or should have been foreseeable and that, considering all the surrounding circumstances, Allright had a duty to protect its invitee from harm. Because it took no steps to protect her, the jury held Allright liable for the harm that ensued. I would find the evidence of foreseeability sufficient to support the jury verdict. For these reasons, I believe the majority's decision to reverse and render a take-nothing judgment is in error.

---

**2.** The rule in effect at the time stated: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or reviewed by the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."